**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAWAAN PARHAM** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **GERALD MAY** *et al.,* | : | |
| *Defendants* | : | **No. 16-6148** |

**<u>M E M O R A N D U M</u>**

PRATTER, J.                                                                    AUGUST  15th , 2023

After being arrested and serving several months in pretrial detention, Kawaan Parham was granted pretrial release on nominal bail pursuant to the condition that he be released to pretrial house arrest and electronic monitoring. Mr. Parham was unable to secure a suitable residence for house arrest, so he remained in pretrial detention before pleading guilty to the charges for which he was arrested.[1] Mr. Parham claims that he was unable to secure a residence because he was deprived of his bail documents for approximately fifteen months because he alleges that they were placed in a desk drawer instead of being delivered to him. Mr. Parham initiated this action against Warden Gerald May, Correctional Officer Joshua Velazquez, Correctional Officer Steven Roseberry, and John/Jane Doe(s) 1-5 claiming that they deprived him of his access to the courts by failing to deliver his bail documents. Warden May and Officers Velazquez and Roseberry moved for summary judgment on all of Mr. Parham's claims. For the reasons that follow, Warden May and Officers Velazquez and Roseberry's motion for summary judgment is granted.

---

[1]      Mr. Parham pled guilty to aggravated assault and possession of a firearm. He received a sentence of 2.5 to 5 years' imprisonment and received credit for time served for his pretrial detention at the Curran Fromhold Correctional Facility. Mr. Parham was released from prison in July 2019.

BACKGROUND

**I.     Mr. Parham's Release on Bail**

Mr. Parham was incarcerated at Curran Fromhold Correctional Facility (CFCF) in Philadelphia as a pretrial detainee following his arrest in 2014. Prosecutors filed a criminal complaint against Mr. Parham on October 3, 2014. On July 1, 2015, Mr. Parham moved for his release under Pennsylvania Rule of Criminal Procedure 600, which provides that "no defendant shall be held in pretrial incarceration in excess of . . . 180 days from the date on which the complaint is filed." Pa. R. Crim. P. 600(B)(1). On July 7, 2015, Mr. Parham's Rule 600 motion for pretrial release was granted.[2] Mr. Parham's bail was reduced to one dollar and his release was conditioned on the following: that Mr. Parham serve house arrest with an electronic monitor and complete and sign bail paperwork issued by the court, which was to include the address of the residence secured by Mr. Parham for his house arrest. Bail documents, including a one-page Short Certificate and accompanying bail bond and surety information documents (the "bail documents"), were mailed to Mr. Parham at the CFCF. The Short Certificate sets forth the conditions of Mr. Parham's release as follows:

> Defendant is to be placed on house arrest/electronic monitoring once a residence is secure (public defender to submit paperwork to house arrest). Bail is modified to nominal in the amount of $1. Defendant is not to be released without an electronic monitor. Defendant is to be confined to the residence 24/7. As of 7/7/15 a residence has not yet been established; public defender to submit residence paperwork.

Ex. B, Resp. Mot. for Summ. J.

---

[2]     Mr. Parham's motion was granted during a hearing that Mr. Parham was not present for. Mr. Parham states that he was brought to the courthouse and met with his new public defender, but his attorney attended the hearing without him.

## II.    Mr. Parham's Attempt to Secure a Residence

Mr. Parham sought to secure a residence for his house arrest. He enlisted the help of Brian Johnson, who secured a residence for Mr. Parham and paid the rent for the residence for the month of August on Mr. Parham's behalf. Mr. Parham provided the necessary information regarding this residence to his criminal defense attorney, and on July 17, 2015, Mr. Parham's attorney filled out the House Arrest and Contacts Sheet. On August 14, 2015, pretrial services interviewed Mr. Parham's girlfriend and the landlord of the residence secured by Mr. Johnson. On August 19, 2015, Mr. Parham received a declination letter for this residence following pretrial services' phone interview with the landlord and Mr. Parham's girlfriend.

Mr. Parham alleges that in order to approve the residence secured for house arrest, he was required to return the executed bail documents. He alleges that he had satisfied all of the other conditions required for pretrial release, but because he was not given the bail documents after his hearing, he could not return them executed and thus the residence secured by Mr. Johnson could not be approved.

Michael P. Bouchard, III—the chief of Pretrial Services for the First Judicial District of Pennsylvania from March 2015 to November 2022—worked in a supervisory position over pretrial matters, including pretrial house arrest procedure. Mr. Bouchard testified as follows regarding the general procedure for a criminal defendant's release to house arrest:

> [G]enerally, when a judge orders a client to electronic monitoring, our staff in our electronic monitoring unit receives the Court Order. Occasionally that will include a contact sheet, which includes information on a contact for that individual for our team to begin an investigation to set up house arrest in the community. If and when the person has a residence that is deemed appropriate by the department, then that information is transferred over to our field team, who conducts a residential investigation to the home and sometime often at that same time we'll install equipment in the home. At that point we work in conjunction with the prison to place an electronic monitor on the individual, who is then released to the community to go home.

3

Bouchard Dep. Tr., 10:9–11:2. Thus, to be released on pretrial house arrest, (1) a detainee must secure a residence and provide contact information to Pretrial Services for that residence; (2) Pretrial Services must deem the residence appropriate, including obtaining landlord approval;[3] and (3) Pretrial Services must install the electronic monitoring equipment in the residence. Bouchard Dep. Tr., 10:9–11:2; 15:7–22. It is only after these three steps are taken that a pretrial detainee can be released on house arrest.

Mr. Bouchard testified that the bail documents—which Mr. Parham claims he was deprived access to for fifteen months—are irrelevant to the job Pretrial Services does in confirming a potential residence for pretrial house arrest.[4] Bouchard Dep. Tr., 20:11–22:2; 29:16–25. Thus, according to Mr. Bouchard, the bail documents would not have impacted Mr. Parham's ability to be released on pretrial house arrest because, as Mr. Bouchard testified, those documents are not considered by Pretrial Services as part of this process. [5] Bouchard Dep. Tr., 20:11–22:2; 29:3–25; Bouchard Decl. ¶ 3. Mr. Bouchard reviewed Mr. Parham's file regarding his pretrial release and testified during his deposition that Pretrial Services received Mr. Parham's House Arrest Contacts and Information Sheet on July 21, 2015. However, Mr. Bouchard testified that the residence listed

---

[3]    Mr. Bouchard testified during his deposition that if the landlord did not approve the detainee staying in the residence, this "would prevent [the detainee] from going to that specific residence." Bouchard Dep. Tr., 15:14–22.

[4]    During his deposition, Mr. Bouchard testified as follows:
    Q: And your testimony is, going back to this Bail Bond document that I have pulled up, that [Mr. Parham's] receipt and signature of this Bail Bond would not have affected at least his electronic monitoring and house arrest status. Correct?
    A: Correct.
    Q: So this document was essentially irrelevant to what your office would be – the job that your office would be doing?
    A: Correct.
Bouchard Dep. Tr., 29:16–25.

[5]    In Mr. Bouchard's declaration, he attested that he "reviewed the bail bond documents provided in connection with Kawaan Parham, CP-51-CR-0013042-2014. (Attached as Exhibit A). These bail documents, *whether they were signed by Mr. Parham or not*, would not affect Pretrial Services placing him on an electronic monitor." Bouchard Decl. ¶ 3 (emphasis added).

on the sheet was deemed to not be appropriate after receiving the landlord's declination in August 2015. According to Mr. Bouchard, had this residence been found appropriate by Pretrial Services (i.e., had the landlord approved Mr. Parham staying in the residence), then Mr. Parham would have been released to pretrial house arrest *regardless of whether he was in possession of the bail documents*. However, because the landlord declined and the residence was not found to be appropriate, Mr. Parham was not released.

### III.   Prisoner Mail

Mr. Parham did not receive the bail documents until October 2016, fifteen months after the hearing in which his motion for pretrial release was granted, when the documents were allegedly found in a desk drawer. Mr. Parham alleges that Officer Velazquez or Roseberry—who worked the evening shift for the cellblock in which Mr. Parham was housed at the CFCF—placed the documents in the desk drawer instead of delivering them to Mr. Parham as they were supposed to do.[6] Mr. Parham alleges that Officers Velazquez and Roseberry distributed *all* mail to the inmates, including court paperwork concerning bail. Officer Velazquez disputes these allegations and testified during his deposition that he has never seen Mr. Parham's bail documents. He further testified that his duties included, *inter alia*, handling and delivering inmates' civilian mail, but did not include handling and delivering inmates' legal mail.[7] Officer Velazquez testified that inmates' legal mail was handled by a supervisor who would open the legal mail in front of the inmate and search it for contraband. Mr. Parham's bail documents are legal mail and, assuming normal

---

[6]      As a result of the fifteen-month delay in receiving his bail documents, Mr. Parham filed a grievance form with CFCF on October 11, 2016, alleging that Officers Velazquez and Roseberry were negligent in their duty to provide him his mail. Mr. Parham's grievance was not addressed, and no hearing was held.

[7]      Officer Roseberry was served with a notice of deposition and a subpoena seeking to take his deposition, but he did not appear for his deposition. Thus, his duties and responsibilities concerning inmates' legal mail is unknown.

protocol was followed, would have been handled and delivered by a supervisor and not by Officer Velazquez.

## IV.    Procedural Background

Mr. Parham filed his Third Amended Complaint alleging four counts under 42 U.S.C. § 1983. Warden May and Officers Velazquez and Roseberry moved to dismiss all counts. The Court granted in part and denied in part the motion to dismiss. The claims remaining after the resolution of the motion to dismiss include: (1) interference with bail in violation of the Fourth and Fourteenth Amendments; (2) interference with mail in violation of the First and Fourteenth Amendments; and (3) interference with court access in violation of the First, Fourth, and Fourteenth Amendments. The claims are asserted against Warden May in his official capacity and Officers Velazquez and Roseberry in their individual capacities.

Warden May and Officers Velazquez and Roseberry then filed a motion for summary judgment. During the oral argument on this motion for summary judgment, Mr. Parham's counsel clarified that Mr. Parham was only bringing a claim based on the denial of access to courts. Mr. Parham's counsel stated that the access to mail and access to bail issues were related to the access to courts claim, but were not separate, independent claims.

### LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

6

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Court views the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

## DISCUSSION

### I.    Mr. Parham's Access to Courts Claim

Mr. Parham first alleges an unlawful deprivation of his liberty—specifically, deprivation of his constitutional access to the courts—caused by Officers Velazquez and Roseberry's failure to deliver the bail documents to Mr. Parham. He alleges that but for the Officers' failure to deliver the bail documents, he would have been released to pretrial house arrest.

"The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). This right also applies to pretrial detainees. *Fuentes v. State of N.J. Office of Pub. Defs.*, No. 05-cv-3446FLW, 2006 WL 83108, at *3 (D.N.J. Jan. 11, 2006). "An access to courts claim is ancillary to the underlying claim, and, as such, [the inmate] must identify a nonfrivolous, arguable underlying claim." *Harper v. Dinella*, 589 F. App'x 67, 69 (3d Cir. 2015) (internal quotation marks omitted).

Therefore, to successfully "establish an access-to-courts claim, a prisoner must demonstrate: (1) an 'actual injury' (i.e., a lost opportunity to pursue a nonfrivolous or arguable underlying claim); and (2) there is no other remedy, save the present civil rights suit, that can possibly compensate for the lost claim." *Heleva v. Walter*, No. 22-cv-1762, 2022 WL 3657185, at *1 (3d Cir. Aug. 25, 2022) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)). The requirement of showing "actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). "It is for the courts to remedy past . . . interference with individual inmates' presentation of claims to the Courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur." *Id.*

Mr. Parham argues that he suffered an actual injury as a result of the fifteen-month delay in receiving his bail paperwork. He avers that because he did not receive the bail paperwork, he did not understand the conditions of his release, thus he lost his opportunity to challenge these conditions. Specifically, Mr. Parham contends that he was unaware that he needed someone to

8

sign off on his ability to live at an address before being released. Mr. Parham argues that he hypothetically could have challenged this condition of release in court because he was not a danger to the community and thus under Pennsylvania Rule of Criminal Procedure 600(D), he should have been released only on nominal bail with no other conditions imposed on his release.

Pennsylvania Rule of Criminal Procedure 600(D)(2) provides that "[e]xcept in cases in which the defendant is not entitled to release on bail as provided by law, when a defendant is held in pretrial incarceration beyond the time set forth in paragraph (B), at any time before trial, the defendant's attorney . . . may file a written motion requesting that the defendant be released immediately on nominal bail subject to any nonmonetary conditions of bail imposed by the court as permitted by law." Section 14 of the Pennsylvania Constitution provides that

> [a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great.

Pa. Const. art. I § 14. Mr. Parham appears to argue that based on the above, nonmonetary conditions of bail may only be imposed where the pretrial detainee is a risk to the community; otherwise, only monetary bail should be imposed. Mr. Parham contends that he is not a risk to the community. Thus, he argues that had he been given his bail paperwork and understood that as a condition of his release, someone was required was required to sign off on his ability to live somewhere, he could have challenged this nonmonetary condition of his release in Court.

To the extent Mr. Parham is arguing that he was deprived of his ability to bring a claim under the Pennsylvania Constitution by Officers Velazquez and Roseberry's failure to deliver his bail documents, his argument is unavailing. It is undisputed that Mr. Parham knew that nonmonetary conditions were imposed on his bail, including that he was required to secure a residence for his pretrial house arrest and that he would not be released without an electronic

9

monitor. Parham Dep. Tr., at 10:5–16 ("Q: Okay. And then on or about July 7[th] of 2015, the judge granted you release to house arrest; is that correct? A: Yes. Q: Okay. But the judge ordered that you not be released without an electronic monitor; is that your understanding? A: Yes. Q: Okay. So by that, you had to have a residence set up in order for you to be released, right" A: Yes."). Even despite not having his bail paperwork, Mr. Parham was aware of these nonmonetary conditions, and as set forth above, he took affirmative steps to secure a residence for his release. Although Mr. Parham claims that he was unaware that he was required to have someone sign off on the residence because he was not given the bail documents, he has not explained how his lack of knowledge of this condition hindered his ability to challenge the other conditions of his release—securing a residence and electronic monitoring—in court under the Pennsylvania Constitution. Because Mr. Parham could have brought his claim under the Pennsylvania Constitution following the July 2015 hearing but did not, he has not successfully established an access to courts claim based on this underlying claim. *Heleva*, 2022 WL 3657185, at *1.

Warden May and Officers Velazquez and Roseberry argue that Mr. Parham has not, and cannot, establish a nonfrivolous underlying claim necessary for his access to courts claim because Mr. Parham has not established an actual injury or a deprivation of his protected rights. Specifically, Warden May and Officers Velazquez and Roseberry argue that the fifteen-month delay in the delivery of the bail documents did not cause a deprivation of Mr. Parham's right to exercise his bail option because the bail documents did not impact his ability to be released to pretrial house arrest, i.e., there was no actual deprivation of liberty. Put differently, Warden May and Officers Velazquez and Roseberry argue that, based on the facts as alleged by Mr. Parham, Mr. Parham would not have been released to pretrial house arrest even if his bail documents had been timely delivered to him. They also argue that Mr. Parham is mistaken as to the instrument

that prevented his release—it was the landlord's declination, not the absence of the bail documents, which resulted in Mr. Parham not being released.

It is undisputed that Mr. Parham could not be released from pretrial detention unless he had secured an appropriate residence equipped with electronic monitoring. Ex. B, Resp. Mot. for Summ. J. ("Defendant is to be placed on house arrest/electronic monitoring once a residence is secure . . . Defendant is not to be released without an electronic monitor."). It is also not disputed that Pretrial Services did not consider the bail documents when approving a residence for house arrest. Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ¶¶ 12-13 ("Mr. Bouchard reviewed the Bail Bond Documents and affirmed that they would not affect Plaintiff being released to electronic monitoring. Mr. Bouchard affirmed that the documents would have been 'irrelevant' to the job that his office would do in confirming Plaintiff's potential residence.") (internal citations omitted). Mr. Bouchard, the chief of Pretrial Services, also testified that Pretrial Services concluded that the residence Mr. Johnson secured for Mr. Parham was not appropriate after conducting an interview with, and receiving a declination from, the landlord. Thus, it was the landlord's declination which resulted in Mr. Parham's inability to be released, not his lack of access to the bail documents.

Mr. Parham seeks to create a genuine dispute as to these material facts by (1) citing to his own deposition testimony, in which he testifies that because he had satisfied all of the conditions for pretrial release, he would have been released if he had been given his bail documents; and (2) asking the Court to make an inference based on speculation that had the landlord been given the bail documents promptly after the July 2015 hearing, the landlord would have approved Mr. Parham staying at the residence, and Mr. Parham would have been released to pretrial house arrest. However, Mr. Parham fails to create a genuine dispute of material fact because the evidence upon

which he relies is insufficient to defeat the motion for summary judgment. *See Matsushita Elec.*
*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[T]he nonmoving party must come
forward with '*specific facts* showing that there is a *genuine issue for trial*.'") (quoting Fed. R. Civ.
P. 56(e) (emphasis added)); *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286
(D.N.J. 2004) ("A nonmoving party must point to *concrete evidence in the record* which supports
each essential element of its case. If the party fails to provide such evidence, . . . the moving party
is entitled to summary judgment as a matter of law.") (internal citations omitted) (emphasis added).

First, Courts in the Third Circuit have held that plaintiffs cannot defeat motions for
summary judgment "by relying solely on [their] self-serving deposition testimony to create
genuine issues of material fact." *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D.
Pa. 2012). "As a general proposition, 'conclusory, self-serving affidavits are insufficient to
withstand a motion for summary judgment.'" *Gonzalez v. Sec'y of the Dep't of Homeland Sec.*,
678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d
156, 161 (3d Cir. 2009)). This rule has been extended to self-serving deposition testimony. *Irving
v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011). The issue, however, "is not whether
Plaintiff has relied solely on his own testimony to challenge the [motion for summary judgment],
but whether Plaintiff's testimony, when juxtaposed with the other evidence, is sufficient for a
rational factfinder to credit Plaintiff's testimony, despite its self-serving nature." *Johnson*, 883 F.
Supp. 2d at 549; *see also Gonzalez*, 678 F.3d at 264 ("[T]his is a case where the court, based on
all of the evidence, can say with confidence that a rational trier of fact could not credit [plaintiff's
testimony].") (internal quotation marks omitted); *Irving*, 439 F. App'x at 127 ("In light of both his
earlier testimony and the other record evidence, [plaintiff's] self-serving deposition testimony is
insufficient to raise a genuine issue of material fact."); *Whitnum v. Meadows at Stroud for Nursing*

12

& *Rehab., LLC*, No. 18-cv-2137, 2020 WL 7773906, at *4 (M.D. Pa. Dec. 30, 2020) ("Given the inconsistencies between the testimony from Plaintiff and the rest of the evidence, . . . and the lack of detail offered in the deposition testimony Plaintiff points to, the Court finds that Plaintiff's self-serving testimony, *ipse dixit*, is insufficient to create a genuine issue of material fact.").

Here, Mr. Parham testified that he satisfied all of the conditions necessary for pretrial release, and that because he did not receive the bail documents, he was not aware that he needed someone to sign off on his residence for him to be released. Parham Dep. Tr., at 16:6–10; 17:13–16; 30:14–23. He bases his argument that he would have been released had he been in possession of the bail documents in large part on his deposition testimony alone. Mr. Parham does not present other evidence in support of his position that he satisfied the conditions required for release, for example, he did not elicit or introduce the testimony of the landlord or anyone in Pretrial Services. Mr. Parham's plainly self-serving testimony contradicts the evidence presented by Warden May and Officers Velazquez and Roseberry, including the deposition testimony of the chief of Pretrial Services, Mr. Bouchard, and the declaration of Mr. Bouchard. Mr. Bouchard's deposition testimony and declaration demonstrate that, despite Mr. Parham's belief, Mr. Parham had not satisfied all of the conditions necessary for pretrial release because the landlord declined to allow Mr. Parham to stay in the residence. Mr. Bouchard also attested that the bail documents have no impact on pretrial release, meaning Mr. Parham would not have been released even if he had the documents because the reason he was not released was the landlord's declination.

Given the lack of detailed support for Mr. Parham's deposition testimony, the contradictory nature of his testimony when compared to the other evidence of record, and the clearly self-serving nature of his testimony, Mr. Parham cannot rely solely on his deposition testimony to create a

genuine issue of material fact and defeat summary judgment. *See Gonzalez*, 678 F.3d at 264;

*Irving*, 439 F. App'x at 127; *Johnson*, 883 F. Supp. 2d at 549; *Whitnum*, 2020 WL 7773906, at *4.

Second, "an inference based upon a speculation or conjecture does not create a material

factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*,

914 F.2d 360, 382 n.12 (3d Cir. 1990); *cf. Windish v. Buckingham Twp.*, No. 20-cv-5942, 2023

WL 1475083, at *9 (E.D. Pa. Feb. 2, 2023) (concluding that plaintiff's characterization of a

document was "wholly speculative, and as such it lack[ed] evidentiary value for purposes of

determining whether there is an issue of fact" at the summary judgment stage). Here, Mr. Parham

asks the Court to find a genuine dispute of material fact based on an inference, without any factual

evidence to support the veracity of the inference.

During the oral argument on the motion for summary judgment, Mr. Parham's counsel

repeatedly asked the Court to infer, based on speculation, that the landlord would have approved

the residence secured by Mr. Johnson for Mr. Parham's house arrest had Mr. Parham received his

bail documents.[8] Apr. 28, 2023 Tr., at 12:11–15:12. However, Mr. Parham did not depose the

---

[8]     Mr. Parham's counsel argued, in relevant part:
        Mr. Lamonaca: [W]e do have his house arrest contact information that was sent in July of
        2015. The only evidence they provided over rejection from the landlord wasn't until later
        in August. So there's certainly room for an inference there that Mr. Parham had secured
        housing or at least done what he thought he needed to do to secure housing. And in that
        window, the only thing that could have prevented his release were these bail bond
        documents.
        The Court: Well, wait a second. During the period of time that you say was the offending
        period of time, had a landlord said sure, come on down, and the only reason he wasn't
        release[d] was because this document wasn't available?
        Mr. Lamonaca: That's the inference we need to make here.
        . . . .
        Mr. Lamonaca: What reasonably and logically seems to have happened is [Mr. Parham]
        secured housing for August, eventually later in August, that fell through. Mr. Parham
        wasn't released. And the landlord wasn't going to continue renting a room to someone who
        was not going to be there or Brian Johnson who helped Mr. Parham with the room wasn't
        going to continue paying rent, when Mr. Parham wasn't released. And again, I think that's
        a reasonable inference that we can draw here. So logically, the only thing – if we make that
        inference. If we understand that he had secured housing or believed that he had done what

landlord who declined the residence secured by Mr. Johnson, nor did he obtain an affidavit from the landlord. So, he presents no evidence in support of this inference from which he asks the Court to find a genuine dispute of material fact. The Third Circuit Court of Appeals has made clear that "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson*, 914 F.2d at 382 n.12. Here, Mr. Parham cannot create a genuine dispute of material fact by asking the Court to infer that the landlord would have approved his residence had his bail documents been promptly delivered to him.[9] *See id.*

Mr. Parham has failed to present adequate evidence to create a genuine dispute of material fact, thus it is not in dispute that the bail documents had no impact on Mr. Parham's ability to be released to pretrial house arrest. Because Mr. Parham's access to courts claim and his claim underlying the access to courts claim are based on a purported deprivation of his constitutional rights arising out of the fifteen-month delay in the delivery of his bail documents, and because the Court finds that it is undisputed that these documents did not impact his ability to be released or his ability to challenge the nonmonetary conditions of his release under the Pennsylvania Constitution, the Court finds that Mr. Parham has failed to allege that Warden May and Officers

---

he could to secure housing, the only thing that could have prevented his release on nominal bail were just that; the bail documents. And again, that was Mr. Parham's understanding of the situation.
Apr. 28, 2023 Tr., at 12:11–13:4; 14:22–15:9.

[9]     Mr. Parham also asks the Court to infer that the landlord's silence can be construed as approval. Apr. 28, 2023 Tr., at 13:10–14:9. In support of this, Mr. Parham presents only his self-serving testimony that everything was in order for him to be released on house arrest. Apr. 28, 2023 Tr., at 30:9–16. However, according to Mr. Bouchard, Pretrial Services will not approve a residence for pretrial house arrest until they have received *affirmative consent* from the landlord—to them, "silence doesn't get anything going." Apr. 28, 2023 Tr., at 34:15–35:21. In other words, the Court cannot infer approval from the landlord's silence because the record evidence clearly establishes that affirmative consent from the landlord was required in order for Pretrial Services to approve the residence for pretrial house arrest. *See Gonzalez*, 678 F.3d at 264; *Robertson*, 914 F.2d at 382 n.12.

Velazquez and Roseberry interfered with his constitutional right to exercise his bail option or to access the courts by failing to deliver Mr. Parham his bail documents.

For all of these reasons, Mr. Parham has failed to establish a non-frivolous constitutional claim underlying his access to courts claim. The record demonstrates that the bail documents had no impact on Mr. Parham's ability to be released to pretrial house arrest, thus the alleged fifteen-month delay in the delivery of these documents to Mr. Parham did not violate Mr. Parham's constitutional rights. Because Mr. Parham has failed to successfully establish an access to courts claim, the Court grants Warden May and Officers Velazquez and Roseberry's motion for summary judgment as to Mr. Parham's access to courts claim.

## II.   Mr. Parham's Failure to Train Claim

Mr. Parham alleges that Warden May failed to properly train the Officers and/or failed to institute a policy or procedure to ensure that inmates receive their mail, and that the deprivation of Mr. Parham's liberty caused by the Officers' failure to deliver the bail documents was a highly predictable consequence of Warden May's failures.

However, because the Court finds that Mr. Parham has not established the requisite non-frivolous claim necessary to sustain his access to courts claim under the First, Fourth, and Fourteenth Amendments, the Court need not address the issue of municipal liability under *Monell*. *See Mulholland v. Gov't of Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no [constitutional] violation in the first place, there can be no derivative municipal claim.") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (providing that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [i]s entirely correct" because "*Monell* does not provide a separate cause of action . . . it *extends* liability to a municipal organization where that organization's failure to train,

16

or [its] policies or customs . . . led to an independent constitutional violation"). Therefore, the Court grants Warden May and Officers Velazquez and Roseberry's motion for summary judgment as to the failure to train claim.

## III.     Defendants John/Jane Doe(s) 1-5

Although not addressed in Warden May and Officers Velazquez and Roseberry's motion for summary judgment, the Court turns to Mr. Parham's apparent lack of diligence in identifying and serving John/Jane Doe(s) 1-5.

Federal Rule of Civil Procedure 10(a) requires that the title of a complaint name every party. Fed. R. Civ. P. 10(a). However, that rule is silent as to the use of fictitious names of defendants. Typically, the use of "Jane Doe" or "John Doe" defendants is permitted by courts for only a finite amount of time, while the plaintiff ascertains their actual identities. *Givens v. Naji*, No. 17-cv-222, 2019 WL 4737618, at *1 (W.D. Pa. Sept. 11, 2019). If ignorance of an unknown defendant's actual identity is the product of lack of reasonable inquiry, then a complaint is properly dismissed without prejudice. *Stratton v. City of Bos.*, 731 F. Supp. 42, 45 (D. Mass. 1989).

Federal Rule of Civil Procedure 4(m) prescribes the amount of time a plaintiff has to serve defendants with summonses and copies of his complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). John/Jane Doe(s) 1-5 were originally named in Mr. Parham's Second Amended Complaint on May 21, 2018. Mr. Parham alleged that "John/Jane Doe(s) 1-5 were employed as correctional officers at Curran Fromhold Correctional Facility, 7901 State Road, Philadelphia, PA 19136." Second Am. Compl. ¶ 5. John/Jane Doe(s) 1-5 were again named as

defendants in Mr. Parham's Third Amended Complaint—the operative complaint—on April 12, 2019. However, it does not appear that Mr. Parham has taken *any* action to identify or serve John/Jane Doe(s) 1-5 since originally naming them as defendants over five years ago in May 2018.

When service is not made within the timeline prescribed by Rule 4(m), a district court must determine whether good cause exists for an extension of time and grant such an extension, or if no good cause exists, determine whether to dismiss the complaint without prejudice or extend time for service. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). To show good cause, a plaintiff must demonstrate good faith and a reasonable basis for noncompliance with the 90-day rule. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).

Mr. Parham has not demonstrated good cause, nor has he provided a reasonable basis for his excessive noncompliance. Mr. Parham has not addressed whether he has ever attempted to identify or serve John/Jane Doe(s) 1-5. Given the absence of evidence of good faith in attempting to properly identify or serve John/Jane Doe(s) 1-5, the Court finds that dismissal of John/Jane Doe(s) 1-5 is appropriate under Rule 4(m). Therefore, the Court will dismiss John/Jane Doe(s) 1-5 without prejudice.

## CONCLUSION

For the reasons set forth above, the Court grants Warden May and Officers Velazquez and Roseberry's motion for summary judgment. An appropriate order follows.

BY THE COURT:

GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE